No. 25-2152

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT**

---

SUNOCO PIPELINE L.P., ENERGY TRANSFER LP, and
ENERGY TRANSFER (R&M), LLC,

*Appellants,*

v.

DANIEL LA HART and KATHERINE LA HART,

*Appellees.*

---

Appeal from the June 13, 2025 Order of the United States District Court
for the Eastern District of Pennsylvania, U.S. District Judge Mia R. Perez,
Case No. 2:25-cv-02072-MRP

---

**BRIEF OF THE APPELLEES**

---

JORDAN C. HUGHES
**BERGER MONTAGUE PC**
1229 Tyler Street NE, Suite 205
Minneapolis, MN 55413
(763) 340-0285

SHANON J. CARSON
Y. MICHAEL TWERSKY
JOSEPH E. SAMUEL, JR.
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
(215) 875-4656

*Counsel for Appellees-Plaintiffs
Daniel La Hart and Katherine La Hart*

# TABLE OF CONTENTS

INTRODUCTION ................................................................1

COUNTER-STATEMENT OF JURISDICTION ...............................2

COUNTER-STATEMENT OF THE ISSUES ..............................5

STATEMENT OF RELATED PROCEEDINGS...........................5

COUNTER-STATEMENT OF THE CASE ..............................6

I.      The Pipeline Leak and its Aftermath..............................6

II.     Proceedings in the District Court......................................8

III.    Relevant Events Post-Remand.........................................12

SUMMARY OF THE ARGUMENT ....................................14

ARGUMENT ...............................................................15

I.      THE COURT LACKS APPELLATE JURISDICTION. ...............15

    A.    Congress linked section 1453(c) to the general bar on appeals of remand orders in 28 U.S.C. § 1447(d) to ensure that appeals of CAFA remands would be strictly limited. ............................15

    B.    Congress's intent in limiting appeals of CAFA remands is apparent. ...........................................................19

    C.    Section 1447(c)'s judicially created limitation on section 1447(d) has no relevance to appeals of CAFA remands. .................................21

    D.    The cases Appellants rely on from the Fourth, Fifth, Eighth, and Eleventh Circuits are distinguishable, or should be rejected by this Court. ......................................................23

        1.    The plain language of section 1453(c) controls....................24

        2.    The Supreme Court would likely apply § 1447(d) to local controversy CAFA remand orders. ...............................27

a.    Each of the cases cited by Appellants incorrectly relies on caselaw interpreting the pre-1996 version of section 1447. ................................................................27

b.    In all events, post-1996, section 1447(c) covers additional defects that are "more substantive" in nature. ................................................................29

c.    Orders mandatorily granting remand based on the local controversy exception are indeed based on a "defect other than lack of subject matter jurisdiction."..32

E.    Appellants' and Amicus's policy arguments are meritless.................37

II.    APPELLANTS' PETITION FOR PERMISSION TO APPEAL SHOULD BE DENIED. ................................................................39

A.    Standard of Review ................................................................39

B.    The District Court's deliberate and well-reasoned application of the local controversy exception does not warrant appellate review. ........40

III.    THE DISTRICT COURT PROPERLY FOUND THAT THE LOCAL CONTROVERSY EXCEPTION APPLIES................................................................42

A.    Standard of Review ................................................................42

B.    CAFA's local controversy exception squarely applies to this local class action arising from a pipeline leak. ................................................................43

1.    The District Court's factual findings regarding the remand order are not a "clear error." ................................................................45

2.    The district court did not improperly shift applicable burdens. ................................................................46

3.    The District Court properly weighed R&M's conduct against its co-defendants' conduct. ................................................................50

4.    DEP's subsequent follow-up letter does not affect remand. ................................................................53

CONCLUSION ................................................................55

# TABLE OF AUTHORITIES

**Cases**

*Abraham v. St. Croix Renaissance Group, L.L.L.P.*,
719 F.3d 270 (3d Cir. 2013) ........................................................ 15, 16, 17, 26, 44

*B.P. Am., Inc. v. Okla. ex rel. Edmondson*,
613 F.3d 1029 (10th Cir. 2010) ............................................................................. 39

*Caminetti v. United States*,
242 U.S. 470 (1917) ............................................................................................... 24

*Carlsbad Tech., Inc. v. HIF Bio, Inc.*,
556 U.S. 635 (2009) ........................................................................ 22, 27, 31, 35

*Cheapside Mins., Ltd. v. Devon Energy Prod. Co., L.P.*,
94 F.4th 492 (5th Cir. 2024) ......................................................................... *passim*

*Coffey v. Freeport McMoran Copper & Gold*,
581 F.3d 1240 (10th Cir. 2009) .................................................................... 43, 53

*Coleman v. Estes Express Lines, Inc.*,
627 F.3d 1096 (9th Cir. 2010) .............................................................................. 40

*Coll. of Dental Surgeons of P.R. v. Conn. Gen. Life Ins. Co.*,
585 F.3d 33 (1st Cir. 2009) .......................................................................... 39, 42

*Cook v. Wikler*,
320 F.3d 431 (3d Cir. 2003) ................................................................................. 36

*Dominion Energy Inc. v. City of Warren Police & Fire Ret. Sys.*,
928 F.3d 325 (4th Cir. 2019) ................................................................................ 39

*Durnell v. Foti*,
2019 WL 4573247 (E.D. Pa. Sept. 20, 2019) ................................................ 49, 50

*Gold v. N.Y. Life Ins. Co.*,
730 F.3d 137 (2d Cir. 2013) ................................................................................. 33

*Hudson United Bank v. LiTenda Mortg. Corp.*,
  142 F.3d 151 (3d Cir. 1998) ............................................................... 31, 32, 34, 35

*Judon v. Travelers Property Cas. Co. of America*,
  773 F.3d 495 (3d Cir. 2014) ................................................................................18

*Kakarala v. Wells Fargo Bank, N.A.*,
  578 U.S. 914 (2016) .............................................................................................22

*Kamm v. ITEX Corp.*,
  568 F.3d 752 (9th Cir. 2009) ......................................................................... 30, 33

*Kaufman v. Allstate New Jersey Insurance Co.*,
  561 F.3d 144 (3d Cir. 2009) ....................................................................... *passim*

*Kelly v. Verizon Pa., LLC*,
  2019 WL 558100 (E.D. Pa. Feb. 12, 2019) .........................................................50

*Kitchin v. Bridgeton Landfill, LLC*,
  3 F.4th 1089 (8th Cir. 2021) ......................................................................... 23, 34

*Kohrs v. Swift Transp. Co. of AZ, LLC*,
  2025 WL 3066302 (9th Cir. Nov. 3, 2025) .........................................................40

*Lively v. Wild Oats Markets, Inc.*,
  456 F.3d 933 (9th Cir. 2006) ....................................................................... 29, 30, 35

*Mason v. Lockwood, Andrews & Newnam, P.C.*,
  842 F.3d 383 (6th Cir. 2016) ..............................................................................33

*McLaren v. UPS Store Inc.*,
  32 F.4th 232 (3d Cir. 2022) .................................................................... 15, 43, 49

*Med. Assocs. of Erie v. Zaycosky*,
  77 F.4th 159 (3d Cir. 2023) ................................................................................36

*Mondragon v. Capital One Auto Finance*,
  736 F.3d 880 (9th Cir. 2013) ....................................................................... 43, 53

*Morgan v. Gay*,
    466 F.3d 276 (3d Cir. 2006) .......................................................................19

*Probola v. Long & Foster Real Estate, Inc.*,
    486 Fed. App'x 229 (3d. Cir. 2012) ........................................... 18, 21

*Puerto Rico v. Ericsson Inc.*,
    201 F.3d 15 (1st Cir. 2000) ......................................................... 34, 35

*Quackenbush v. Allstate Ins. Co.*,
    517 U.S. 706 (1996) ........................................................... 28, 34, 35

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*,
    566 U.S. 639 (2012) .....................................................................16

*Ramirez v. Vintage Pharma., LLC*,
    852 F.3d 324 (3d Cir. 2017) .........................................................18

*Reece v. AES Corp.*,
    638 F. App'x 755 (10th Cir. 2016).................................................33

*Sewak v. INS*,
    900 F.2d 667 (3d Cir. 1990) .........................................................54

*Shaw v. Hyatt Corp.*,
    425 F. App'x 121 (3d Cir. 2011).................................................18

*Simring v. GreenSky, LLC*,
    29 F.4th 1262 (11th Cir. 2022)............................................ 23, 28, 34

*Skyline Tower Painting, Inc. v. Goldberg*,
    148 F.4th 209 (4th Cir. 2025)............................................. 23, 25, 26

*Snapper, Inc. v. Redan*,
    171 F.3d 1249 (11th Cir. 1999) ................................................. 30, 31

*Stewart v. Entergy Corp., et al.*,
    35 F.4th 930 (5th Cir. 2022)..........................................................53

*Thermtron Products, Inc. v. Hermansdorfer*,
  423 U.S. 336 (1976) ......................................................................21

*Things Remembered v. Petrarca*,
  516 U.S. 124 (1995) ................................................................ 27, 28

*United States v. Ron Pair Enters., Inc.*,
  489 U.S. 235 (1989) ......................................................................24

*US Framing Int'l LLC v. Continental Bldg. Co.*,
  134 F.4th 423 (6th Cir. 2025) .....................................................30

*Visendi v. Bank of Am., N.A.*,
  733 F.3d 863 (9th Cir. 2013) .......................................................33

*Vodenichar v. Halcon Energy Properties, Inc.*,
  733 F.3d 497 (3d Cir. 2013) ................................................ *passim*

*Walsh v. Defenders, Inc.*,
  894 F.3d 583 (3d Cir. 2018) ........................................ 43, 45, 48, 52

**Statutes**

28 U.S.C. § 1291 ................................................................ *passim*

28 U.S.C. § 1332 ................................................................ *passim*

28 U.S.C. § 1441(b)(2) ..................................................................25

28 U.S.C. § 1447 ................................................................ *passim*

28 U.S.C. § 1453 ................................................................ *passim*

**Rules**

Federal Rule of Appellate Procedure 27 ................................................1

Federal Rule of Appellate Procedure 32 ................................................1

**Other Authorities**

151 Cong. Rec. H723–01 ..............................................................39

151 Cong. Rec. S999–02 ............................................................................39

1996 U.S.C.C.A.N. 3417 ........................................................................24

Appellees Daniel and Katherine La Hart ("Appellees") respectfully submit this Brief of the Appellees in response to the brief ("Opening Brief") filed by Appellants Sunoco Pipeline L.P. ("SPLP"), Energy Transfer LP ("Energy Transfer" or "ETLP"), and Energy Transfer (R&M), LLC ("R&M") (collectively, "Appellants") and the amicus brief by the Chamber of Commerce ("Amicus").

## **INTRODUCTION**

The Court should not disturb the District Court's Order remanding this environmental class action to Pennsylvania state court. This is precisely the type of case Congress contemplated when it carved out local controversies from the reach of the Class Action Fairness Act of 2005 ("CAFA"). Appellees' claims arise from a breach in Appellants' Twin Oaks Pipeline in Upper Makefield Township, Bucks County, Pennsylvania, which caused a discharge of petroleum, jet fuel, gasoline, and hazardous and toxic chemicals into the aquifer, bedrock, and groundwater underlying Appellees' residences. JA344–49. The cracked segment of the pipeline, the location of the leak, and the impacted community are all located within the Commonwealth of Pennsylvania. JA344–50; JA405–06. In short, the circumstances of this case are undisputedly local.

Appellants challenge the District Court's Order granting remand to Pennsylvania state court based on CAFA's local controversy exception, 28 U.S.C. § 1332(d)(4)(A). JA3. However, this Court lacks jurisdiction to hear this appeal,

because Congress intentionally limited appellate review of orders remanding cases removed under CAFA. Moreover, even if this Court reaches the merits of the appeal, the District Court's analysis and findings granting remand based on allegations against R&M, an undisputed local defendant, are uncontroversial and closely follow this Court's precedent.

At bottom, Appellants urge reversal based on their speculation that the District Court failed to conclusively find a purported "clerical error" in an order from the Pennsylvania Department of Environmental Protection ("DEP"). What Appellants ignore is that the District Court carefully weighed this argument and found that the document at issue is a final and binding DEP Administrative Order confirming that local defendant R&M bears responsibility for the Pipeline Leak. The District Court's factual finding regarding the Administrative Order's import is only reviewable for clear error and should be affirmed.

## COUNTER-STATEMENT OF JURISDICTION

The Court should dismiss this appeal for lack of jurisdiction, which Appellants wrongly filed as of right pursuant to 28 U.S.C. § 1291. The District Court's Order remanding this action to state court is properly only appealable by permission pursuant to 28 U.S.C. § 1453(c). Remand orders are generally not appealable, *see* 28 U.S.C. § 1447(d), but section 1453(c) offers a narrow exception for permissive appeal in CAFA cases.

After Appellees moved to dismiss this appeal on July 3, 2025, a motions panel of this Court referred the question of appellate jurisdiction to the merits panel and directed the parties to address jurisdiction in their briefs. ECF 28. Appellees demonstrate below why this Court should decline appellate jurisdiction under 28 U.S.C. § 1291.

Appellants also separately filed a petition for permission to appeal pursuant to section 1453(c), which is the procedure that properly applies here. *See* No. 25-8027. The motions panel also referred that petition to this Court. ECF 28. Appellants' petition should be denied for the reasons set forth herein, including because this case does not present any important or unsettled CAFA-related question that is likely to recur.

Appellants' statement of jurisdiction also incorrectly claims that "[a]ll parties agree that the matter satisfies the requirements for the District Court to exercise original jurisdiction under section 1332(d)." *See* Opening Brief at 1. On the contrary, because CAFA's local controversy exception applies, CAFA mandates that the District Court "shall decline to exercise jurisdiction." 28 U.S.C. § 1332(d)(4). This statutory language differs from another exception to CAFA providing that a "district court *may*, in the *interests of justice and looking at the totality of the circumstances*, decline to exercise jurisdiction." 28 U.S.C. § 1332(d)(3) (emphasis added). As the District Court correctly stated in this case, "CAFA jurisdiction is *subject to* the local

controversy exception[.]" JA10. Therefore, "the requirements for the District Court to exercise original jurisdiction under section 1332(d)," Brief at 1, are not satisfied in this case.

## COUNTER-STATEMENT OF THE ISSUES

1. Is an order granting a motion to remand to state court pursuant to CAFA's local controversy exception appealable as of right pursuant to 28 U.S.C. § 1291, or only by permission pursuant to 28 U.S.C. § 1453(c)?

2. Should Appellants' petition to appeal be granted where a case remanded pursuant to CAFA's local controversy exception presents no important or unsettled CAFA-related question likely to recur, has proceeded on the merits in state court for five months, such that reversal would prejudice Appellees, cause undue delay, and would be contrary to Congress's intent?

3. Does CAFA's local controversy exception apply to an environmental class action on behalf of only Pennsylvanians, whose claims arise entirely under state law, and are brought against at least one local defendant, that the District Court determined, based on the facts before it, form a significant basis of the claims?

## STATEMENT OF RELATED PROCEEDINGS

Appellants' separate petition to appeal under 28 U.S.C. § 1453(c) (No. 25-8027), has been assigned to this panel. ECF 28.

SPLP separately sued Appellees and others in the Eastern District of Pennsylvania in *Sunoco Pipeline, L.P. v. La Hart, et al.*, No. 2:25-cv-03694 (E.D. Pa. July 18, 2025). After the court denied SPLP's motion for a temporary restraining order, SPLP appealed (No. 25-2551).

## COUNTER-STATEMENT OF THE CASE

This class action concerns an environmental disaster stemming from a breach of Appellants' Twin Oaks Pipeline (the "Pipeline") in Bucks County, Pennsylvania. JA344–49. The breach in the Pipeline caused a significant discharge of jet fuel and other hazardous and toxic substances into the surrounding residential community, including the underlying aquifer, bedrock, and groundwater (the "Leak"). *Id.* The substances discharged pose a direct and immediate threat to Appellees' and class members' health and well-being. *Id.* The cracked segment of the Pipeline, the location of the Leak, and the impacted community are all located within the Commonwealth of Pennsylvania. JA349–50; JA405–06.

## I.    THE PIPELINE LEAK AND ITS AFTERMATH

Appellees are residents of the Mt. Eyre Manor neighborhood in Bucks County that has been significantly harmed by the Leak. JA397. Their contaminated property is situated roughly 500 feet from where the Leak was detected and is surrounded by other properties contaminated by the Leak. *Id.* Appellees' property also sits on top of and draws water from the same aquifer that the Pipeline leaked into. *Id.* Appellants' conduct caused severe harm and poses a serious ongoing and current danger to affected residents' physical health and mental and emotional wellbeing, the community's groundwater, soil, air quality, and ecosystem, and to property values. JA393–405. The Pipeline Leak uprooted the affected community and has

already caused certain residences to be unlivable. *Id.* As a direct result of the Leak, Appellees now own and live on property that has tested positive for contamination, and above a contaminated aquifer that provides them and the Class with their drinking water. This existing contamination, coupled with the significant and real risk that further contamination will continue to accrue on Appellees' property, has ruined enjoyment of Appellees' property, and has damaged the property's value. *Id.* Appellees filed a class action lawsuit in Pennsylvania state court on behalf of a class made up entirely of Pennsylvania residents, all from a single neighborhood, seeking relief from Appellants' misconduct. JA405–06.

Appellants' Pipeline Leak was confirmed on January 31, 2025. Appellants, however, first received odor complaints from residents living in Mt. Eyre Manor as early as September 2023 – 16 months earlier – but failed at that time to properly investigate and identify the Leak at an earlier time when more harm may have been preventable. JA347. Despite receiving numerous complaints from Pennsylvania residents about strange odors since at least September 2023, Appellants failed to properly act for at least over 16 months. And to this day, Appellants have still not disclosed the full extent of the disaster. JA347–49.

Appellants maintain a vast pipeline network by relying on various subsidiaries, limited partnerships, and joint ventures for the ownership and operation of pipeline facilities and supporting assets and infrastructure throughout the country,

including the Pipeline. JA350–53. Appellees plausibly allege that the Pipeline is owned, operated, and/or managed by all three Appellants. *Id.* Notable for present purposes, in addition to every member of the proposed class being a Pennsylvania resident (from a single neighborhood), it is undisputed that R&M is a Pennsylvania company and is considered a Pennsylvania citizen for purposes of CAFA. JA349.

On March 6, 2025, DEP issued an administrative order to SPLP *and* R&M, directing each to respond to the Leak and implement certain remedial actions ("Administrative Order"). JA381; JA639–51. The Administrative Order was issued under Pennsylvania law and contained findings as to each entity's responsibility with respect to the Leak. *Id.* Moreover, in the cover letter accompanying the Administrative Order, DEP explicitly noted that SPLP and R&M's legal rights were at stake, that they should contact their attorneys regarding the Administrative Order "at once" and that if they wanted to challenge the order, their "appeal must be filed with and received by the [Environmental Hearing] Board within 30 days." JA637. Nonetheless, no appeal was filed, including as to the inclusion of R&M in the Administrative Order.  JA9–10.

## II.    PROCEEDINGS IN THE DISTRICT COURT

On March 27, 2025, Appellees filed their Complaint in the Philadelphia County Court of Common Pleas, asserting claims under Pennsylvania common law against the owners and operators of the Pipeline, including SPLP, ETLP, and R&M.

JA37–99. In that original Complaint, Appellees properly alleged that R&M is a Pennsylvania limited liability company and that DEP had issued the March 6 Administrative Order to both R&M and SPLP, directing those entities "to respond to the Pipeline Leak and implement certain remedial actions, including the supply of bottled water and the installation of point-of-entry treatment ('POET') systems for certain residents in Upper Makefield Township, Pennsylvania." JA71.[1]

On March 31, 2025, after Appellees filed their original Complaint and before Appellants' 30-day deadline to appeal the Administrative Order had closed, SPLP sent a letter to DEP purportedly addressing certain issues with respect to the Administrative Order. JA653. In its letter, SPLP indicated that it did not believe R&M was a proper party to the Administrative Order, stating that its response was "without waiver" of any future argument that R&M was improperly named. *Id.* But R&M and SPLP chose not to formally appeal the Administrative Order. Indeed, R&M itself never even informally challenged the Administrative Order, or any findings contained therein. Thus, having now waived their rights to appeal the Administrative Order, SPLP and R&M are both legally bound by it as to their shared responsibility and liability for the Leak. JA12.

---

[1]   In addition to Appellees' class action, individual residents within the community have filed at least seven related lawsuits in the same Pennsylvania state court alleging distinct personal injuries against the same defendants. Appellants have not sought to remove these cases. Opening Brief at 11 n. 1.

On April 24, 2025, Appellants removed this case to federal court, asserting CAFA jurisdiction. Appellants also contended that R&M was fraudulently joined and that the District Court should accordingly disregard R&M from its jurisdictional analysis. JA20. Appellees moved to remand on May 27, 2025, asserting that R&M was a properly joined Pennsylvania citizen, and that remand was mandatory pursuant to CAFA's local controversy exception. JA600–01. Appellees also sought, in the alternative, limited jurisdictional discovery regarding SPLP's state citizenship for CAFA purposes, given the considerable extent to which SPLP has publicly identified itself as having a principal place of business in Pennsylvania. *Id*. Appellants opposed Appellees' motion to remand on June 10, 2025. *Id.* Notably, Appellants' opposition, like its appeal here, relied almost exclusively on a single self-serving Declaration, signed by in-house counsel, about R&M's role in connection with the Pipeline and the Leak that R&M seeks to have accepted as unconvertible evidence. JA325-26.

On June 13, 2025, the District Court granted Appellees' Motion to Remand pursuant to CAFA's local controversy exception. JA3. In its opinion granting remand, the District Court concluded that "CAFA's local controversy exception was designed for cases like this," involving "a local environmental incident affecting only Bucks County, Pennsylvania residents, against at least one in-state defendant who was plausibly alleged to have played a significant role." JA12. The District Court, in looking at the facts before it, expressly found that DEP's naming of R&M

in the Administrative Order, and the binding nature of that Order as to R&M, were sufficient to establish CAFA's local controversy exception by a preponderance of the evidence. JA11–12. The District Court determined that there was "no dispute" that "the entire putative class is comprised of citizens of Pennsylvania; Defendant R&M is a citizen of Pennsylvania; Plaintiffs are seeking significant relief from R&M; the injuries caused by the pipeline leak occurred in Pennsylvania; and no other class actions asserting the same have been filed in the past three years." JA11.

Further, and most important here, the District Court found Appellees had met their burden to demonstrate that R&M's conduct formed a "significant basis" for their claims: "in the absence of any formal appeal by Defendants, the PADEP Administrative Order, which explicitly names R&M and directs it to undertake remedial action for the leak, satisfies the significant basis provision." JA12. The court further found that "PADEP's directive to R&M to take active steps to correct the leak, not merely informational or reporting duties, suggests that PADEP viewed it as operationally or corporately responsible and not some nominal party. R&M was given notice of its right to appeal or challenge the [A]dministrative [O]rder, and its failure to do so renders it final and binding under Pennsylvania law." *Id*.

Separately, the District Court determined that Appellants did not satisfy their "heavy burden of persuasion" with respect to fraudulent joinder and that the Administrative Order, and the absence of any appeal of that order, created "a

plausible basis for the claim that R&M was legally responsible or operationally involved in the events surrounding this litigation." JA8–10. Notably, the District Court did not place a heavy burden of persuasion generally on Appellants, but only in connection with their allegations about fraudulent joiner. *Id.*

## III.    RELEVANT EVENTS POST-REMAND

Appellants immediately filed an emergency motion to stay the mailing of the Remand Order in the District Court, which was denied on June 20, 2025. JA18–19. Appellants filed this appeal the same day, ECF 1, but separately sought leave to appeal under 28 U.S.C. § 1453(c). *See* Case No. 25-8027. With proceedings back underway in state court, Appellants also filed a motion to stay proceedings in that court on June 24, 2025, which Appellees opposed and which remains pending. This case has, nonetheless, proceeded in state court on the merits, including substantial motion practice regarding demurrer and venue issues, and substantial written discovery. Appellees have also sought emergency injunctive relief on the same grounds that they sought it in District Court prior to remand, seeking to remedy an exigent deficiency in Appellants' sampling and testing protocols and seeking the temporary shutdown of the Pipeline until its safety can be assured.[2]

---

[2] Appellants responded to Appellees' injunction request by separately suing Appellees and their neighbors in a separate federal case and seeking a temporary restraining order, which was summarily rejected by the District Court. This second case has also been appealed by Appellants and is being separately briefed at Case No. 25-2551.

Appellees moved to dismiss this appeal for lack of jurisdiction on July 3, 2025. ECF 20. After Appellants opposed that motion, a motions panel of this Court referred the question of appellate jurisdiction to the merits panel and directed the parties to address jurisdiction in their briefs. ECF 28. The motions panel also referred Appellees' petition for permission to appeal to this Court.

While this appeal was pending, on July 14, 2025, the DEP wrote to Appellants about R&M's role in response to the Pipeline Leak. Mot. to Supp., Ex. 1 (ECF 31-2 or "July 14 Letter"). In the July 14 Letter, the DEP stated that it now *also* considered SPLP and R&M's "ultimate parent corporation," ETLP, a responsible party. DEP further stated that, while it has yet to require an individual "response" from R&M, DEP "retains the right to enforce its Order" against R&M. Appellants filed a motion to this Court on October 6, 2025, seeking to supplement the record with the July 14 Letter. ECF 31. Appellees did not oppose the motion. ECF 41. Nowhere in the July 14 Letter did the DEP indicate that R&M was only included in the Administrative Order by error; thus, that argument is only self-serving conjecture by R&M devoid of any evidentiary basis. *Id.*

## SUMMARY OF THE ARGUMENT

This Court can easily resolve Appellants' purported of right appeal, because the Court lacks jurisdiction to hear it. Congress intentionally limited review of remand orders in cases initially removed under CAFA, so Appellants can only obtain review by permission under 28 U.S.C § 1453(c). Appellants and Amicus are mistaken that the limited grant of permissive review in section 1453(c) exists alongside 28 U.S.C § 1291 or that appellants may select between the two, because section 1453(c) makes clear that it is the exclusive avenue to appeal CAFA remands.

Tacitly acknowledging that their of right appeal lacks jurisdiction, Appellants also filed a section 1453(c) petition seeking permission to appeal. That petition should be denied because it presents no important or unsettled CAFA-related question that is likely to recur. Here, the District Court applied this Court's established jurisprudence on the elements of the local controversy exception.

Even if this Court reaches the merits, which it should not, the District Court's analysis and findings granting remand based on allegations against R&M, an undisputed local defendant, are uncontroversial and closely follow this Court's precedent. The District Court made factual findings about the nature of Appellees' allegations that are subject to clear error review and should not be disturbed. Appellees improperly invite the Court to revisit factual findings and find new facts based on a document that post-dates the remand order. Remand should be affirmed.

## ARGUMENT

## I.     THE COURT LACKS APPELLATE JURISDICTION.

Appellants were not legally entitled to initiate an appeal as of right pursuant to 28 U.S.C. § 1291. They should have filed—and, indeed, did separately file—a request to appeal by permission under 28 U.S.C. § 1453(c). The Court should resolve this appeal by dismissing it for lack of appellate jurisdiction. As shown below, the plain text of the relevant statutes, read in harmony, limit appeals of orders remanding Class Action Fairness Act ("CAFA") cases to an expedited permissive procedure.

### A.     Congress linked section 1453(c) to the general bar on appeals of remand orders in 28 U.S.C. § 1447(d) to ensure that appeals of CAFA remands would be strictly limited.

Congress artfully drafted section 1453(c)'s limited grant of review by expressly linking it to the general bar on appealing remand orders under 28 U.S.C. § 1447(d). As a threshold matter, section 1447(d),[3] with limited *enumerated* exceptions, generally "makes orders remanding a case to State court unreviewable[.]" *McLaren v. UPS Store Inc.*, 32 F.4th 232, 236 n.2 (3d Cir. 2022); *see also Abraham v. St. Croix Renaissance Group, L.L.L.P.*, 719 F.3d 270, 275 (3d Cir. 2013) ("Under traditional federal practice, an order remanding a case to state

---

[3] *See* 28 U.S.C. § 1447(d) ("An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise, except that an order remanding a case to the State court from which it was removed pursuant to section 1442 or 1443 of this title shall be reviewable by appeal or otherwise."). Section 1447(d)'s judicially created exceptions are addressed below.

court is not reviewable."). Section 1453 ("Removal of class actions") expressly incorporates section 1447(d)'s bar on appeals of remand orders. 28 U.S.C. § 1453(c)(1) (providing that "section 1447 shall apply to any removal of a case under this section").

However, section 1453(c) goes on to create a limited exception to the default rule, providing that "*notwithstanding section 1447(d)*, a court of appeals *may* accept an appeal from an order of a district court granting or denying a motion to remand a class action to the State court from which it was removed if application is made to the court of appeals not more than 10 days after entry of the order." § 1453(c)(1) (emphasis added). In other words, section 1453(c) "*diverges* from traditional federal practice by *providing* for discretionary appellate review" of orders granting or denying remand in CAFA cases. *Abraham*, 719 F.3d at 275 (quoting 28 U.S.C. § 1453(c)(1)) (emphasis added).

While section 1447(d)'s applicability to certain types of remand orders has plagued courts and caused various amendments to the statute—as addressed below—section 1453(c) removes any of that ambiguity in the CAFA context.[4] It plainly states that section 1447 "shall apply to any removal" of a CAFA class action, *but* "notwithstanding section 1447(d)," which ordinarily bars appeal of remand

---

[4] "It is a commonplace of statutory construction that the specific governs the general." *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012).

orders, *Abraham*, 719 F. 3d at 275, the Court "may" accept and perform a quick-look appeal of any order "granting *or* denying" a motion to remand. § 1453(c)(1). *Id.*

Appellants and their amicus fail to rebut the plain meaning of section 1453(c)(1). Instead, they wrongly state, *ipse dixit*, that because section 1291 grants appellate review to final orders, *both* section 1291 and 1453(c) supply independent appellate review procedures and Appellants are free to choose which one they want. Opening Brief at 45 ("section 1453(c) does not express exclusivity"). Appellants' approach ignores that section 1453(c)—the section *on CAFA removals*—prefaces its reference to section 1447(d) by first stating that "section 1447 *shall apply to any removal of a case under this section*." Appellants also ignore the straightforward recitation of section 1447(d)'s "traditional practice," and how section 1453(c) "diverges" from it, that this Court described in *Abraham*. 719 F.3d at 275.

Nowhere do Appellants address the language from *Abraham*, which Appellees previously identified in support of their motion to dismiss this appeal. ECF 20 at 4-5. Simply put, Appellants' interpretation of section 1453(c) would render the phrase "notwithstanding section 1447(d)" superfluous, and their disregard for Congress's careful drafting choices should be rejected.

Appellants focus instead on the abstract meaning of "notwithstanding" clauses generally, ignoring that in this statute the clause follows an express statement that

section 1447, including 1447(d), applies.[5] Appellants have the analysis backwards when they state that "section 1453's 'notwithstanding' cause does *not* say 'notwithstanding section 1291[.]'" Brief at 46. Just the opposite: under Appellees' straightforward reading, there is no need for such a clause as section 1447, which is directly incorporated, already expressly limits the application of section 1291. In other words, section 1453(c) *does* express exclusivity.

Consistent with this clear grant of limited statutory authority, Appellees are unaware of *any* instance where this Court considered an appeal of right from an order remanding a case removed under CAFA.[6] Instead, to Appellees' knowledge, the Court has only ever considered such appeals after accepting them pursuant to the limited authority provided by section 1453(c)(1). *See, e.g.*, *Ramirez v. Vintage Pharma., LLC*, 852 F.3d 324, 327 (3d Cir. 2017); *Judon v. Travelers Property Cas. Co. of America*, 773 F.3d 495, 500 (3d Cir. 2014); *Probola v. Long & Foster Real Estate, Inc.*, 486 Fed. App'x 229, 231 (3d. Cir. 2012).

---

[5] Put differently, Appellees are not arguing that "notwithstanding section 1447(d)" alone creates a negative *inference* that section 1447(d) otherwise applies, *see* Opp. at 17; Rather, section 1453(c) *expressly* states that it does by also incorporating all of section 1447.

[6] While the Court did consider an automatic appeal tangentially involving CAFA in *Shah v. Hyatt Corporation*, that case only involved CAFA because after the defendant removed pursuant to the general diversity statute, 28 U.S.C. § 1332(a), the plaintiff mistakenly based her motion to remand on defendant's failure to satisfy CAFA. *Shaw v. Hyatt Corp.*, 425 F. App'x 121, 122 (3d Cir. 2011).

Indeed, in *McLaren*, this Court confirmed that its jurisdiction over a CAFA appeal involving the local controversy exception was "pursuant to" section 1453(c), expressly noting that (i) that section exists "notwithstanding section 1447(d)" and (ii) that section 1447(d) *otherwise* "makes orders remanding a case to State court unreviewable[.]" 32 F.4th at 236 n.2.

The clear and unambiguous text of section 1453(c) and its explicit reference to section 1447 both govern, and should swiftly resolve, this appeal.

**B.    Congress's intent in limiting appeals of CAFA remands is apparent.**

While their plain text establishes a relationship between sections 1447(d) and 1453(c), the Congressional intent behind linking these provisions is equally clear. As this Court has observed, Congress intended that orders remanding cases initially removed under CAFA should only be appealable in limited circumstances and on an expedited time frame:

> The purpose of this provision is to develop a body of appellate law interpreting the legislation without unduly delaying the litigation of class actions. As a general matter, appellate review of orders remanding cases to state court is not permitted, as specified by 28 U.S.C. 1447(d). New subsection 1453(c) provides discretionary appellate review of remand orders under this legislation but also imposes time limits.

*Morgan v. Gay, et al*, 466 F.3d 276, 278 (3d Cir. 2006) (quoting S. Rep. 109–14, at 49 (2005)). This dual intent is carried out by (1) allowing (where appropriate) limited

appeals, by petition, of remand orders notwithstanding the default rule against them, but (2) requiring that any such appeal resolve very quickly. If Appellants were correct that section 1291 applied separately *alongside* section 1453(c), this would necessarily "unduly delay[] the litigation of class actions" and undercut one of Congress's primary concerns, which section 1453(c) addresses.

Additionally, permitting automatic appeals in this context would disrupt an important balance struck by Congress concerning the *design* of section 1453(c), which authorizes limited permissive appeals of orders "granting *or* denying" motions to remand in CAFA cases. § 1453(c). If the Court were to accept Appellants' argument that they can automatically appeal under section 1291, it would result in an incongruence whereby defendants could appeal orders granting remand as of right, but plaintiffs could only appeal orders denying remand by permission under section 1453(c). If this were Congress's intent, it would not have worded the statute to cover orders "granting *or* denying" *all* motions to remand under CAFA. This Court should not disturb that balance by re-writing the statute.

In their opening briefs, Appellants and their amicus double down on this idea. They acquiesce that, per their argument, the presence of "granting or" in section 1453(c) would have no legal effect for remands based on CAFA's *exceptions*, arguing it should only apply to remands for other CAFA deficiencies (such as the amount in controversy). Opening Brief at 48; Amicus at 7–8. This illogical position

invites the Court to rewrite section 1453(c), which incorporates section 1447 as against *all* CAFA remand orders, not just ones based on the threshold requirements of CAFA. Appellants' tortured reading of section 1453(c) as applying only to a subset of CAFA remands, ***without saying so***, should be rejected.

Indeed, confirming that any purported coexistence between section 1453(c) and section 1291 would contravene Congressional intent, Appellants claim that the Court can simply use its "inherent power to expedite a section 1291 appeal" and "mimic the timetables section 1453 prescribes" if the Court deems it necessary. Opening Brief at 49. This is precisely the type of unnecessary ambiguity that Congress sought to eliminate by carefully legislating the limited appellate review available after CAFA remands.

### C.    Section 1447(c)'s judicially created limitation on section 1447(d) has no relevance to appeals of CAFA remands.

Despite section 1447(d)'s broad textual bar on appeals of "order[s] remanding a case to the State court from which it was removed"—and the "strong congressional policy against review of remand orders," *Probola*, 486 Fed. App'x at 231 n.3—the Supreme Court has held that section 1447(d) must be read *in pari materia* with section 1447(c), which provides for a 30-day deadline to move to remand "on the basis of any defect other than lack of subject matter jurisdiction" and provides that if at any time before final judgment it appears the court "lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). *See Thermtron*

*Products, Inc. v. Hermansdorfer*, 423 U.S. 336, 345-352 (1976). While the text of section 1447(c) appears limited to setting *deadlines* by which a district court may entertain a remand motion, Supreme Court precedent establishes that the proper reading of sections 1447(c)–(d) "limit[s] the remands barred from appellate review by § 1447(d) to those that are based on a ground specified in § 1447(c)." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 638 (2009) (collecting cases).

However, this line of cases need not apply in the CAFA context, where Congress has clearly indicated otherwise. Section 1453(c) expressly incorporates section 1447 and states that its provisions "***shall***" apply "*except* that notwithstanding section 1447(d)," a court of appeals may accept an expedited permissive appeal. *Id.* (emphasis added). The plain language of these provisions eliminates any need to consider whether the District Court's remand order, or any other remand order issued in a case removed under CAFA, is constrained by section 1447(c). Section 1453(c) speaks for itself.

Moreover, even if it were true that section 1447(c)'s grounds for remand constrain section 1447(d)—a rule that rests on tenuous reasoning[7]—in the CAFA

---

[7] Appellees note the ongoing willingness of Supreme Court Justices to revisit the Court's prior holdings in *Thermtron* and its progeny. *See Kakarala v. Wells Fargo Bank, N.A.*, 578 U.S. 914 (2016) (Thomas, J., dissenting from denial of certiorari) ("I would grant review in [any case] that would allow us to revisit our mistaken approach to § 1447(d)."). Even in *Carlsbad*, four of the justices would have taken the opportunity to reconsider *Thermtron* and the Court's subsequent interpretation of section 1447(d). *See Carlsbad*, 556. U.S. at 641–645 (concurrences of Justices

context, the interplay between the statutes is no different. By its plain text, section 1453(c) should be read to explicitly insert *into* section 1447(c) an additional remand ground that is barred from appellate review by section 1447(d), "*except* that notwithstanding section 1447(d)," a court of appeals may accept an expedited permissive appeal. § 1453(c). As such, Appellees' reading of the statutes does not conflict with *Thermtron* or its progeny.

### D.     The cases Appellants rely on from the Fourth, Fifth, Eighth, and Eleventh Circuits are distinguishable, or should be rejected by this Court.

Seemingly recognizing their appeal may not actually be of right, Appellants took the unusual step of citing caselaw directly in their Notice of Appeal. *See* ECF 1 (citing *Cheapside Mins., Ltd. v. Devon Energy Prod. Co., L.P.*, 94 F.4th 492, 495–97 (5th Cir. 2024); *Simring v. GreenSky,* LLC, 29 F.4th 1262, 1265–66 (11th Cir. 2022); *Kitchin v. Bridgeton Landfill, LLC*, 3 F.4th 1089, 1092 (8th Cir. 2021). Appellants and their Amicus heavily rely on those cases here, along with a newly decided case from the Fourth Circuit, *Skyline Tower Painting, Inc. v. Goldberg*, 148 F.4th 209, 217 (4th Cir. 2025). Opening Brief at 49–51; Amicus at 9–11.

---

Stevens, Scalia, and Breyer (joined by Justice Souter)). Appellees seek to preserve the argument that *Thermtron* misinterpreted section 1447 and should be overruled or, at a minimum, recognized as superseded by the 1996 amendments to section 1447(c).

However, for the reasons set forth below, the Court should not follow these cases here. First, with due respect to those courts, their interpretations contravene the plain language of section 1453(c). Second, their decisions regarding the appealability of CAFA remands are based on the outdated, pre-1996 version of section 1447(c), and on Supreme Court cases decided before that amendment.

### 1.    The plain language of section 1453(c) controls.

Respectfully, each of these courts neglected to abide by the plain statutory language of section 1453(c). *See United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989) ("[W]here, as here, the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'") (quoting *Caminetti v. United States*, 242 U.S. 470, 485 (1917)). None credited that section 1453(c) clearly incorporates but then creates an exception to section 1447(d). Nor did they consider the canon that a specific statute governs over a general one, or that section 1453(c) (and all of CAFA) postdates section 1447(d).

For example, in *Cheapside Minerals*, the Fifth Circuit held that "§ 1453(c) did not supplant § 1291 and become the lone vehicle by which an appellant can obtain review of a final order remanding class action litigation to state court; it simply ***permits certain appeals denying remand*** that §§ 1447(d) and 1291 would have otherwise prohibited." 94 F.4th at 496 (emphasis added). This holding re-defines "granting" in section 1453(c)(1) as only applying to some CAFA remands, when

Congress did not include any such limitation. It also ignores that section 1453 expressly incorporates section 1447.[8]

The Fourth Circuit in *Skyline*, respectfully, reaches the same erroneous holding, concluding that section 1453(c)(1)'s permissive procedure "is nonexclusive" and appellants can instead choose automatic appeal under section 1291. 148 F.4th at 217. Like *Cheapside Minerals*, *Skyline* contravenes section 1453(c)'s plain language, which expressly incorporates section 1447(d).

*Skyline* at least acknowledges its awkward result. *Id.* at 219 ("[W]hy would *any* party subject itself to [1453(c)(1)] when it could just file a notice of appeal?") (emphasis in original). But it too easily dismisses this concern, identifying three inapposite situations that it wrongly viewed as saving section 1453(c) from surplusage. *Id*. First, while some appellants "might prefer the quick turnaround," the concern is whether those who *don't* may unilaterally avoid section 1453(c)'s mandate.[9] Second, while orders *denying* remand are not otherwise appealable, *Skyline* still renders section 1453(c)'s word "granting" surplusage. Third, section 1447 broadly "shall" govern *any* CAFA remand; section 1453(c) does not limit its application to defects in removal.

---

[8] Importantly, the Fifth Circuit did not have the benefit of the views of a party opposing an of right appeal. *Cheapside Mins.*, 94 F.4th at 496 n. 4.

[9] It would also make little sense for *of right* appellants to ever *elect* section 1453(c), risking their appeal even being heard.

*Skyline* also declares that "*nothing* in the plain text of § 1453 *suggests* it is the exclusive avenue," but then concedes in the same paragraph that section 1453's incorporation of section 1447(d) "*could be read to suggest*" exactly that. *Id.* at 219. *Skyline* purports to resolves this clear contradiction by "presum[ing]" that, because the Supreme Court already delineated the remand situations that section 1447(d) covers in *Thermtron* and *Quackenbush*, Congress was necessarily "aware that a remand order like the one at issue here"—based on CAFA's *exceptions*— "might be appealable under § 1291 even without the enactment of § 1453." *Id*. But CAFA and its exceptions *did not exist* when those cases were decided; they were obviously silent regarding "remand order[s] like the one at issue here[.]" Congress could have easily and expressly excluded CAFA's exceptions from section 1453(c) if it wished.

Importantly, neither Appellants nor Amicus acknowledge that this Court has described the interplay between sections 1447 and 1453(c) in a way that aligns with *Appellees'* position. As noted above, in *Abraham*, this Court clearly stated that the "traditional practice" is that "an order remanding a case to state court is not reviewable" because of section 1447(d), but CAFA "*diverges* from traditional federal practice" and allows for "discretionary appellate review" of orders granting remand of CAFA cases. *Abraham*, 719 F.3d at 275 (quoting 28 U.S.C. § 1453(c)(1)) (emphasis added). Appellees' interpretation naturally flows from this Court's statements of the law.

2.    <u>The Supreme Court would likely apply § 1447(d) to local controversy CAFA remand orders.</u>

The decisions from the Fourth, Fifth, Eighth, and Eleventh Circuits relied on outdated precedent to allow for the appealability of CAFA remands under § 1291.

> a.    *Each of the cases cited by Appellants incorrectly relies on caselaw interpreting the pre-1996 version of section 1447.*

These courts' holdings are premised on caselaw addressing the pre-1996 version of section 1447. As discussed above, since *Thermtron*, the Supreme Court has interpreted section 1447(c) as "limiting the remands barred from appellate review by § 1447(d) to those that are based on a ground specified in § 1447(c)." *Carlsbad*, 556 U.S. at 638. Given this interplay, the grounds specified in section 1447(c) take on significant importance.

Pre-1996, the first part of section 1447(c) read as follows:

> A motion to remand the case on the basis of ***any defect in removal procedure*** must be made within 30 days after the filing of the notice of removal under section 1446(a).

28 U.S.C. § 1447(c) (version in effect from Dec. 9, 1988 to Sept. 30, 1996) (emphasis added). Thus, as interpreted by *Thermtron* and its progeny, section 1447(d)'s bar applied only when "a district court's remand is based on a timely raised defect in removal procedure or on lack of subject-matter jurisdiction—the grounds for remand recognized by § 1447(c)." *Things Remembered v. Petrarca*, 516

U.S. 124, 127 (1995); *see also Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712 (1996).

As Appellants' cited cases would have it, the story ended there. They each refer to the pre-1996 wording and rely on *Quackenbush* and *Things Remembered*, which were decided before the amendments, to hold that "[u]nder § 1447(d), a remand order is [only] unreviewable if the district court remands the case for lack of subject matter jurisdiction or a ***procedural*** removal 'defect.'" *Cheapside Minerals*, 94 F.4th at 496 (emphasis added) (citing *Things Remembered*, 516 U.S. at 127–28); *Simring*, 29 F.4th at 1265 (local controversy exception "is not a ***procedural*** 'defect' under the first part of section 1447(c)") (emphasis added).

But the story did not end there. Months after the decision in *Quackenbush*, Congress amended section 1447(c) to remove the word "procedural":

> A motion to remand the case on the basis of ***any defect other than lack of subject matter jurisdiction*** must be made within 30 days after the filing of the notice of removal under section 1446(a).

28 U.S.C. § 1447(c) (version in effect from Oct. 1, 1996 to present) (emphasis added). Thus, if applying the interpretation that "only remands based on grounds specified in § 1447(c) are immune from review under § 1447(d)," *Quackenbush*, 517 U.S. at 712, Congress had now necessarily broadened that list of "grounds" to

include not just "any defect in removal procedure" but, "any defect other than lack of subject matter jurisdiction." § 1447(c).[10]

Applying *Thermtron*'s rationale to the post-1996 version of section 1447, then, a remand order based on "any defect" is unappealable. The District Court's Remand Order was based on such a "defect" (which, post-1996, need not be procedural): a mandatory exception to CAFA jurisdiction. This Court should respectfully disregard these cases that rely on the outdated version of the statute.

> b.   *In all events, post-1996, section 1447(c) covers additional defects that are "more substantive" in nature.*

While the 1996 amendments expanded the meaning of "defect," some courts have rejected the idea that Congress intended it to cover all remand orders for any reason (such as non-statutory reasons, like forum selection clauses arising by private agreement). However, courts *have* still interpreted the amendment to add *some* additional "defects," such that a new category of "more substantive" defects are now included within the ambit of section 1447(c). *Lively v. Wild Oats Markets, Inc.*, 456 F.3d 933, 939 (9th Cir. 2006).

---

[10] The official House Report noted that Congress's intent was to "impose [section 1447(c)'s] 30-day limit ***on all motions to remand*** except in those cases where the court lacks subject matter jurisdiction[.]" House Report (Judiciary Committee) No. 104-799, 2, 1996 U.S.C.C.A.N. 3417, 3418 (Sept. 17, 1996) (emphasis added); *see also id.* at 3419 (comments of Judiciary chairman Rep. Hyde that "S. 533 would clarify that the 30-day limit for remanding a case from federal court to state court applies ***to all motions to remand***, except in cases in which the federal court lacks subject matter jurisdiction") (emphasis added).

For example, in *Lively*, the Ninth Circuit observed that "by substituting 'defect other than lack of subject matter jurisdiction' for 'defect in removal procedure,' Congress sought to ensure that even the 'more substantive' removal defects, such as § 1441(b) violations, were subject to [1447(c).]" 456 F.3d at 939. Based on this reasoning, the Ninth Circuit held that remands based on the forum-defendant rule, 28 U.S.C. § 1441(b)(2),[11] were precisely the type of "more substantive" removal defects covered by the 1996 expansion of section 1447(c). *Id.*; *see also US Framing Int'l LLC v. Continental Bldg. Co.*, 134 F.4th 423, 429 (6th Cir. 2025).

Conversely, one example of remand not based on a "defect" is when a court returns a case to state court based on a forum selection clause. *See Kamm v. ITEX Corp.*, 568 F.3d 752, 757 (9th Cir. 2009). In *Kamm*, the Ninth Circuit observed that with the 1996 amendments, "Congress freed courts to read the term 'defect' to cover motions to remand based on *non-procedural statutory requirements* for removal," but held that forum selection clauses did not fit within this category. *Id.* at 756–57l; *see also Snapper, Inc. v. Redan*, 171 F.3d 1249, 1254 (11th Cir. 1999) (reaching

---

[11] Section 1441(b)(2) "confines removal on the basis of diversity jurisdiction to instances where no defendant is a citizen of the forum state." *Lively*, 456 F.3d at 939. Congress created the forum defendant rule because, while "[r]emoval based on diversity jurisdiction is intended to protect out-of-state defendants from possible prejudices in state court," this protection is unnecessary "in cases where the defendant is a citizen of the state in which the case is brought." *Id.* This same principle underlies CAFA's local controversy exception. It "allows the plaintiff to regain some control over forum selection by requesting that the case be remanded to state court." *Id.*

same conclusion). Unlike the forum-defendant rule, which turns on a substantive defect in removal, remand based on a forum selection clause "merely means that the federal court has held the parties to the terms of their agreement, as with any other contractual adjudication." *Id.* at 1253. An additional example is *Carlsbad*, where the Supreme Court held that the "purely discretionary" nature of section 1367(c) over a case where only state law claims remain meant that a remand pursuant to that statute was not "a remand based on a 'lack of subject matter jurisdiction' for purposes of §§ 1447(c) and (d)." *Carlsbad*, 556 U.S. at 639.

This Court has also acknowledged, akin to *Lively*, that the amendments to section 1447(c) have "slightly altered the grounds for remand 'specified' in the text of § 1447(c)." *Hudson United Bank v. LiTenda Mortg. Corp.*, 142 F.3d 151, 157 n.8 (3d Cir. 1998). The Court in *Hudson United Bank*, like the Supreme Court in *Carlsbad*, held that discretionary remands pursuant to section 1367(c) were reviewable. *Id.* at 157. However, this Court correctly reasoned—as Appellees urge the Court to again do here—that its holding was based on "the sharp distinction between remands authorized by § 1367(c) and remands authorized by § 1447(c)." *Id.* While section 1367(c) reflects a court's "judgment" not to exercise jurisdiction, *id.* at 158, "1447(c) remands are warranted only when a federal court ***has no rightful authority*** to adjudicate a state case that has been removed from state court." *Id.* at

157. "In such cases, the statute provides a quick, permanent, and mandatory remedy to return a state case to state court." *Id.*

In sum, after the 1996 amendments and applying the link between sections 1447(c) and (d) from *Thermtron* and its progeny, the applicable statutes should be interpreted as follows. Remands for lack of subject matter jurisdiction or procedural defects are subject to section 1447(d)'s bar on appeals, as was the case pre-1996. Additionally, post-1996, any statutory defects that are "more substantive" in nature (*i.e.*, based on non-procedural statutory requirements for removal), such as the forum-defendant rule, are now also within the ambit of section 1447(c) and thus 1447(d). However, remands that do not result automatically from a statutory framework—for example, remand based on privately agreed forum selection clauses, or discretionary remand under section 1367(c)—are not covered by section 1447(c)-(d) and are appealable.

> c.   *Orders mandatorily granting remand based on the local controversy exception are indeed based on a "defect other than lack of subject matter jurisdiction."*

Applying these precedents and the current text of section 1447 to this case, orders granting remand based on the *mandatory* local controversy exception should fall within the meaning of "any defect other than lack of subject matter jurisdiction" and are therefore not appealable. § 1447(c)-(d). The mandatory nature of the

exception, its similarity to the forum-state defendant rule, and the clear and unambiguous text of section 1453(c) all compel this result.

The local controversy exception, when satisfied, requires *mandatory* remand. *See* 28 U.S.C. § 1332(d)(4)(A) (stating that "district court *shall* decline to exercise jurisdiction"). Most Courts of Appeals to have considered the issue hold that the phrase "shall decline to exercise jurisdiction" means that the local controversy exception is not jurisdictional,[12] but still, the use of the word "shall" unambiguously strips a district court of any discretion to retain jurisdiction over the case.

Because § 1332(d)(4)(A) requires federal courts to *mandatorily* abstain from exercising jurisdiction, it falls squarely within the category of "defect" that the 1996 amendments to section 1447(d) captured, *i.e.*, "motions to remand based on *non-procedural statutory requirements* for removal." *Kamm*, 568 F. 3d at 756–57 (emphasis added). The local controversy exception is mandatory, and it defeats removal automatically when satisfied. It is a "non-procedural statutory requirement" that courts have no discretion to ignore.

Indeed, this Court has stated that the current section 1447(c) covers any defect stemming from a situation "when a federal court has ***no rightful authority to***

---

[12] *Compare Mason v. Lockwood, Andrews & Newnam, P.C.*, 842 F.3d 383, 389 (6th Cir. 2016) (not jurisdictional); *Visendi v. Bank of Am., N.A.*, 733 F.3d 863, 869 (9th Cir. 2013) (same), *with Reece v. AES Corp.*, 638 F. App'x 755, 767 (10th Cir. 2016) ("CAFA contains certain mandatory 'jurisdictional' exceptions," including local controversy exception).

*adjudicate* a state case that has been removed from state court." *Hudson United Bank*, 142 F.3d at 157 n. 8 (emphasis added). In such cases, section 1447(c) "provides a quick, *permanent*, and mandatory remedy to return a state case to state court." *Id.* (emphasis added). That's precisely the situation here: avoiding application of the local controversy exception is indeed a requirement that defendants *must achieve* for successful removal. *Cf.* Amicus at 6 ("defect" means statutory failure to achieve "successful removal") (citing *Autoridad de Energía Eléctrica de Puerto Rico v. Ericsson Inc.*, 201 F.3d 15, 17 (1st Cir. 2000)).

The cases Appellants rely on fundamentally ground their decision in the idea that the local controversy exception is based in "abstention principles." *Cheapside Minerals*, 94 F.4th at 496; *see also Simring*, 29 F.4th at 1265 ("local controversy exception is 'akin' to abstention"); *Kitchin*, 3 F.4th at 1093 ("the exception is an abstention doctrine rather than a jurisdictional rule"). By framing CAFA exceptions in terms of "abstention principles," these courts then fit the exceptions into the Supreme Court's precedent that an "abstention-based remand order does not fall into either category of remand order described in § 1447(c)" and therefore is not within section 1447(d)'s bar on appeals. *Quackenbush*, 517 U.S. at 712. However, this overgeneralizes abstention and glosses over how abstention-based remands are discussed in these precedents.

The Supreme Court's decision in *Quackenbush* dealt with *Burford* abstention—a doctrine based in discretion—and was analyzing the pre-1996 version of section 1447(c). *Id.* Similarly, in *Carlsbad*, the Court heavily weighed the "purely discretionary" nature of section 1367(c). 556 U.S. at 639. Fitting the mandatory local controversy exception into these precedents is a square peg in a round hole. At most, they stand for the proposition that *discretionary* abstention-based remands, like other discretionary grounds for remand, are not "defects" under section 1447(c). However, the mandatory local controversy exception bears a much closer relationship to the forum-defendant rule, a well-recognized "defect" under section 1447(c). *See supra* at 30. Just as the forum-defendant rule recognizes a home defendant does not need protection "from possible prejudices in state court" in an individual case, *Lively*, 456 F.3d at 940, the local defendant in a CAFA local controversy does not need such protection in a class action proceeding in its home state. In both settings, the district court is required to remand the case.

Appellants claim that this distinction between mandatory and discretionary abstention is "from thin air," but it isn't—it is well-supported by *Hudson United Bank.* There, this Court helpfully distilled what section 1447(c) covers: any situation "when a federal court has ***no rightful authority to adjudicate*** a state case that has been removed from state court." 142 F.3d at 157. Appellants miss the point when they state that the Court was not referring to anything other than the grounds

35

specified in text of section 1447(c). Brief at 37 n. 5. This is precisely why *Hudson United Bank*'s characterization is useful: it explains what "defect" *means* in section 1447(c), and that explanation perfectly describes the local controversy exception.

Finally, Appellants' references to *Cook v. Wikler*, 320 F.3d 431 (3d Cir. 2003) and *Med. Assocs. of Erie v. Zaycosky*, 77 F.4th 159 (3d Cir. 2023), are not helpful to Appellants' position.[13] To the contrary, *Cook* fully supports Appellees' reading of the relevant statutes. There, this Court stated that the "1996 amendment plainly effects a broadening of the scope of § 1447(c)—expanding its application to not just *procedural* defects, but *any* defects." 320 F.3d at 434 (emphasis in original). This Court observed, as Appellees have argued, that this "has profound implications for [the Court's] jurisdiction to review remand orders issued by district courts," and "means the amended statute now applies broadly to include all removals that are not authorized by law." *Id.* at 435 (internal quotation omitted). Here, the District Court "remand[ed] a case to state court based on a conclusion that the removal was not authorized by law," as CAFA mandated that it do. *Id.* While CAFA, its exceptions under section 1332(d), and section 1453(c) did not yet exist when *Cook* was decided, CAFA's local controversy exception is precisely the type of remand that this Court observed was now covered by section 1447(c) in *Cook*.

---

[13] *Zaycosky* dealt with improper removal based on a forum selection clause which, for reasons discussed at length herein, is fundamentally distinct from statutory grounds mandating remand, like the local controversy exception. 77 F.4th at 163.

### E.     Appellants' and Amicus's policy arguments are meritless.

Appellants also assert purported policy arguments to the effect that some plaintiffs might not like the 30-day deadline to file a motion to remand that would apply under a plain language reading of the statute, and Appellees are not "appreciat[ing] what a boon it is" if plaintiffs are not subject to that deadline. Opening Brief at 44. This speculation about what plaintiffs should think, and which favors delay, is immaterial to what the statute says.

Indeed, by expressly incorporating section 1447 into section 1453(c) when it enacted CAFA, Congress *already determined* that plaintiffs seeking remand under CAFA's exceptions are subject to section 1447(c). Appellees here had no issue complying, and other plaintiffs should not either. The elements of the local controversy exception are based mostly on *allegations* and are identifiable within 30 days. The only possible elements that may *potentially* require discovery are the state citizenships of the defendants or absent class members. *Id.* But a plaintiff can raise the motion to remand within 30 days and then either party can request any necessary discovery.[14]

---

[14] In this way, the exception operates in exactly the same way that a disputed remand motion based on the forum-defendant rule would operate where defendant citizenship is disputed. The same factual issue is in dispute in either context, a fact Appellants overlook. Opening Brief at 38–39.

Appellants also note that this Court has "expressed reluctance to create circuit splits[.]" Opening Brief at 52. While this may be true, when existing decisions rest on incomplete briefing or overlook key statutory language, it is not only appropriate—but necessary—to depart from those rulings. This is especially true where, as here, following those decisions would require ignoring both express statutory text and the logical extension of this Court's own well-reasoned descriptions of the procedures at issue.

Indeed, in opposing Appellees' motion to dismiss this appeal, Amicus agreed that earlier decisions from other circuits were not reached after "a full round of adversarial briefing on this sometimes-bypassed issue" and that "this case" presents a good opportunity to resolve the issue. ECF 23 at 2. For that same reason, the Court should discredit the notion that no "compelling basis" exists for a circuit split. Opening Brief at 52.

Finally, Amicus's policy arguments regarding "efficiency" rest purely on speculation about forum shopping and abuse, concerns that Congress already addressed when it carefully crafted section 1453(c). Congress's decision to generally eliminate appeals of remand orders and only allow discretionary expedited review in the CAFA context is highly efficient.

## II. APPELLANTS' PETITION FOR PERMISSION TO APPEAL SHOULD BE DENIED.

### A. Standard of Review

CAFA provides for discretionary appellate review of an order of a district court granting or denying a motion to remand a class action to the state court from which it was removed. 28 USCA § 1453(c)(1); *Kaufman v. Allstate New Jersey Insurance Co.,* 561 F.3d 144, 151 (3d Cir. 2009); *Vodenichar v. Halcon Energy Properties, Inc.,* 733 F.3d 497, 503 (3d Cir. 2013).

While this Court has not articulated a standard for considering petitions for permission to appeal under section 1453(c), other circuits have considered the following list of criteria:

> (1) "the presence of an important CAFA-related question"; (2) whether the question is "unsettled"; (3) "whether the question, at first glance, appears to be either incorrectly decided or at least fairly debatable"; (4) "whether the question is consequential to the resolution of the particular case"; (5) "whether the question is likely to evade effective review if left for consideration only after final judgment"; (6) whether the question is likely to recur; (7) "whether the application arises from a decision or order that is sufficiently final to position the case for intelligent review"; and (8) whether "the probable harm to the applicant should an immediate appeal be refused [outweighs] the probable harm to the other parties should an immediate appeal be entertained."

*B.P. Am., Inc. v. Okla. ex rel. Edmondson,* 613 F.3d 1029, 1033 (10th Cir. 2010) (Gorsuch, J.) (quoting *Coll. of Dental Surgeons of P.R. v. Conn. Gen. Life Ins. Co.,* 585 F.3d 33, 38–39 (1st Cir. 2009); *see also Dominion Energy Inc. v. City of Warren Police & Fire Ret. Sys.,* 928 F.3d 325, 334 (4th Cir. 2019) (emphasizing that "the

foregoing list is non-exhaustive"); *Coleman v. Estes Express Lines, Inc.*, 627 F.3d 1096, 1100 (9th Cir. 2010) (adopting the "helpful list of criteria" from *Dental Surgeons*); *Kohrs v. Swift Transp. Co. of AZ, LLC*, 2025 WL 3066302, at *1 (9th Cir. Nov. 3, 2025).

### B. The District Court's deliberate and well-reasoned application of the local controversy exception does not warrant appellate review.

The Court should deny Appellants' petition for permission to appeal because (i) this case does not present any important or unsettled CAFA-related question that is likely to recur; and (ii) "probable harm" would result to Appellees were the petition granted, in the context of a purely local case that has continued to develop on the merits in a state court that is well equipped to handle it.

As the Ninth Circuit recently noted, the "principal[]" factors guiding whether to grant permissive review of a CAFA appeal are "whether there exists the presence of an important CAFA-related question," and whether that question "is likely to 'evade effective review if left for consideration only after final judgment.'" *Kohrs*, 2025 WL 3066302, at *1 (quoting *Coleman*, 627 F.3d at 1100). "If the CAFA-related question is unsettled, immediate appeal is more likely to be appropriate." *Coleman*, 627 F.3d at 1100. Conversely, if the question concerns settled law, review should be denied. *Cf. id.*

This Court has already set forth the standard that district courts should apply in determining whether a local defendant forms a "significant basis" of the claims in

a case removed under CAFA. *Kaufman v. Allstate N.J. Ins. Co.*, 561 F.3d 144, 156 (3d Cir. 2009). Courts must conduct a "substantive analysis comparing the local defendant's conduct alleged to the alleged conduct of all defendants." *Id.* The District Court duly and properly applied that caselaw here, expressly referring to *Kaufman* and finding that "[t]he PADEP's directive to R&M to take active steps to correct the leak, not merely informational or reporting duties, suggests that PADEP viewed it as operationally or corporately responsible and not some nominal party." JA12. This is a factual finding that is unique to this contamination case and unlikely to recur in other cases. Indeed, it is unclear what new legal rule Appellants even seek by their petition to appeal, other than a disagreement about an *existing* rule announced by this Court in *Kaufman*. This is an insufficient basis to grant a permissive appeal.

Moreover, granting Appellants' permissive appeal would prejudice Plaintiffs' ability to efficiently prosecute their case, which has proceeded on the merits for *five months* (and counting) in state court since the District Court's remand order.[15] One of the relevant factors on a section 1453(c) petition is whether "the probable harm to the applicant should an immediate appeal be refused [outweighs] the probable harm to the other parties should an immediate appeal be entertained." *Dental*

---

[15] Appellants did not petition this court for any stay of the remand order or for any other relief that would have held the state court proceeding in abeyance.

*Surgeons*, 585 F.3d at 39. Here, substantial harm would result from entertaining an appeal of a case that is ongoing in state court seeking an injunction, environmental remediation, compensation for significant diminution of property values, and recoupment of out-of-pocket costs that continue to accrue for class members. Appellees and the putative class members living in the contaminated community would continue to lack clarity about what court their case will proceed in while this Court considers the appeal after the case is submitted. Virtually no harm would result to Appellants, who are free to continue raising the same arguments in defense of this case that they have raised on the merits in state court for the last five months.

In short, there is nothing that the District Court did in remanding this matter pursuant to CAFA's local controversy exception that would suggest lower courts need this Court's guidance, or that would invite a helpful answer to any unsettled CAFA question. Accordingly, the Court should decline discretionary appellate review of this issue.

## III.   THE DISTRICT COURT PROPERLY FOUND THAT THE LOCAL CONTROVERSY EXCEPTION APPLIES.

### A.   Standard of Review

This Court reviews issues of subject matter jurisdiction and statutory interpretation *de novo*. *Vodenichar*, 733 F.3d at 502. However, the District Court's findings of fact underlying its CAFA remand order are reviewed for clear error. *See*

*Mondragon v. Capital One Auto Finance*, 736 F.3d 880, 886 (9th Cir. 2013); *Coffey v. Freeport McMoran Copper & Gold*, 581 F.3d 1240, 1246 (10th Cir. 2009).

**B.    CAFA's local controversy exception squarely applies to this local class action arising from a pipeline leak.**

The District Court carefully followed the directives of Congress and this Court in granting remand. Though CAFA authorizes federal jurisdiction over class actions even in the absence of complete diversity, it requires a district court to decline to exercise jurisdiction over a class action involving a uniquely local controversy. *Walsh v. Defenders, Inc.*, 894 F.3d 583, 586 (3d Cir. 2018); *McLaren*, 32 F.4th at 241 (citing 28 U.S.C. § 1332) ("Even if a federal court has jurisdiction under CAFA, it must decline to exercise that jurisdiction if the class action involves a local controversy").

To this end, CAFA includes two mandatory exceptions to federal subject matter jurisdiction, the "local controversy" and "home state" exceptions. *Vodenichar,* 733 F.3d at 503. The local controversy exception "seeks to 'identify a truly local controversy—a controversy that uniquely affects a particular locality to the exclusion of all others.'" *Id*. at 508 n 11 (citing 151 Cong. Rec. H723–01, 2005 WL 387992 (daily ed. Feb. 17, 2005) (statement of Rep. Sensenbrenner)). This exception "'enables State courts to adjudicate truly local disputes involving principal injuries concentrated within the forum State.'" *Id*. (citing 151 Cong. Rec. S999–02, 2005 WL 283380 (daily ed. Feb. 7, 2005) (statement of Sen. Specter)). Simply put,

"[t]hese provisions assure that aggregate actions with substantial ties to a particular state," like this one, "remain in the courts of that state." *Abraham*, 719 F.3d at 278.[16]

Consistent with this Court's precedent, the District Court here analyzed the local controversy exception using the established elements that a party seeking to invoke the exception must show, to wit, that:

> (1) greater than two-thirds of the putative class are citizens of the state in which the action was originally filed; (2) at least one defendant is a citizen of the state in which the action was originally filed (the "local defendant"); (3) the local defendant's conduct forms a significant basis for the claims asserted; (4) plaintiffs are seeking significant relief from the local defendant; (5) the principal injuries occurred in the state in which the action was originally filed; and (6) no other class action asserting the same or similar allegations against any of the defendants had been filed in the preceding three years.

JA11 (citing *Vodenichar*, 733 F.3d at 506-07). Based on its careful analysis of the record and evidence before it, the District Court found there was "no dispute" that the entire class is comprised of Pennsylvania citizens; that Defendant-Appellant R&M is a citizen of Pennsylvania; that Appellees are seeking significant relief from R&M; that the injuries caused by the Leak occurred in Pennsylvania; and that no other class actions asserting the same have been filed in the past three years. *Id*. The

---

[16] CAFA's drafters specifically identified, as the quintessential example of the local controversy exception, a case where "local residents seek compensation for property damage resulting from a chemical leak at a manufacturing plant in that community would fit this criterion, provided that the property damage was limited to residents in the vicinity of the plant." 151 Cong. Rec. H723–01, 2005 WL 387992.

District Court also determined, after analyzing the issue in light of the evidence presented, that R&M's conduct formed a significant basis for Appellees' claims. *Id.* at 9. As the District Court succinctly stated, "CAFA's local controversy exception was designed for cases like this." JA12 (citing *Kaufman*, 561 F.3d at 149).

      1.    <u>The District Court's factual findings regarding the remand order are not a "clear error."</u>

The District Court's careful consideration of the implications of the Administrative Order are only reviewable for clear error. In their petition to appeal, Appellants claimed that the remand order constituted "clear error." No. 25-8027, ECF 1 at 11. In their full opening brief, Appellants recast the District Court's decision as a "legal error" that is "manifest," Brief at 32, but this does not change the fact that the District Court factually interpreted the Administrative Order and the surrounding circumstances and made *findings* about it that are only subject to clear error review. This is a high burden that Appellants cannot satisfy with their mere speculation that the Administrative Order purportedly mistakenly names R&M, an assertion for which Appellants offer no actual support on the record.

The District Court's findings are fully justified based on the record and are consistent with this Court's interpretation of the local controversy exception. *See, e.g.*, *Vodenichar*, 733 F.3d at 507-10 (affirming order granting remand based on local controversy exception and reviewing factors); *Walsh*, 894 F.3d at 593 (affirming remand order based on local controversy exception). The District Court

did not, as Appellants argue, simply rely on a "clerical error" (Brief at 5) and impute the requisite significance to R&M's conduct based solely on its inclusion in the Administrative Order.

The District Court instead found that the Administrative Order "explicitly names R&M and directs it to undertake remedial action for the [L]eak"; that it suggests that DEP views R&M as "operationally or corporately responsible" for the Leak; and that when R&M failed to appeal, the Administrative Order was rendered "final and binding under Pennsylvania law." JA12. The District Court correctly observed that based on the entire administrative record and DEP's findings and order therein, R&M shares responsibility and liability for the Leak, and that R&M's conduct therefore formed a significant basis for Appellees' claims.

2. <u>The district court did not improperly shift applicable burdens.</u>

Appellants assert that the District Court misapplied the remand standard and "incorrectly relieved the La Harts of their burden." Brief at 29. Appellees do not dispute that, under *Kaufman*, they bore the burden below "to show that the local controversy exception should apply." *Kaufman*, at 561 F.3d at 153. However, Appellants again misinterpret the District Court's findings with respect to the "substantial basis" factor, ignoring the court's explicit reference to, and analysis of, the moving party's burden to show that the local controversy exception applies by a preponderance of evidence. *See* JA11-12.

With respect to the substantial basis factor, the District Court did not, as Appellants argue, shift the burden of proof from Appellees to Appellants. The District Court simply made the unremarkable finding that the Administrative Order (1) named R&M; (2) directed R&M to take certain remedial action with respect to the Leak; and (3) suggested that DEP views R&M as "operationally or corporately responsible" for the Leak. JA8–12. The District Court observed that when R&M failed to appeal the Administrative Order, it became "final and binding under Pennsylvania law" which made R&M at least partially responsible for the Leak in the eyes of the DEP. JA12. Indeed, these were not even *disputed* facts—Appellants do not and cannot dispute that the Administrative Order found R&M to share responsibility for remediation of the Leak and imposed obligations thereby, that R&M did not appeal the Administrative Order or otherwise exhaust its administrative remedies to escape those obligations, or that the Administrative Order is now binding upon R&M. The District Court thus arrived at a common sense finding of fact based on the record before it.

Nor did the District Court refuse to consider evidence Appellants submitted in their effort to undercut the Administrative Order. The District Court acknowledged and considered the arguments and evidence that Appellants raised, and then in its proper discretion rejected them, finding that Appellants' "arguments do nothing more than raise a factual dispute, not a jurisdictional bar." *See* JA6–12.

In rejecting Appellants' fraudulent joinder argument (which they abandon on appeal), the District Court explained that Appellants' declaration regarding R&M's involvement with the Pipeline was contradicted by the administrative record, and that Appellants' "characterization of the PADEP's findings as a clerical mistake is not dispositive at this stage." *Id*. at 6–7. The Court then weighed the evidence in light of its finding that R&M was not fraudulently joined and found that Appellees had met their burden. *Id*. at 9. Thus, the District Court did not "ignore" Appellants' purported evidence, Brief at 32; it simply found that such evidence (which included primarily self-serving and untested submissions about R&M's supposed corporate purpose) was not dispositive as to whether the local controversy exception applied.

Instead, the District Court credited the Administrative Order and the administrative record underlying it, which established R&M's responsibility for the Leak and which remains unchallenged by Appellants at the administrative level. *See Walsh*, 894 F.3d at 589 (rejecting argument that allegedly local defendant was "merely a 'nominal party' without 'a real interest in the litigation'").

Importantly, Appellants *opposed* jurisdictional discovery in this case. Such discovery may have provided an opportunity to test the veracity of Appellants' submissions. The District Court ruled on the pleadings and in full consideration of the record evidence before it, as Appellants requested. The District Court weighed (a) the plausible allegations in Appellees' Complaint, including DEP's unchallenged

findings in the Administrative Order, against (b) Appellants' unsupported guesswork that the expert agency charged with overseeing environmental remediations in Pennsylvania imposed legal obligations upon a party only by "scrivener's error," and properly ruled based on the submissions. JA9–12.

Accordingly, the District Court's consideration of the record and evidence before it, as well as its ultimate decision, was entirely consistent with Third Circuit precedent concerning the lower courts' role in weighing the facts and evidence available to determine whether an exception to CAFA applies. *See Vodenichar,* 733 F.3d at 503 n.1 ("Courts may consider pleadings as well as evidence that the parties submit to determine whether subject matter jurisdiction exists or an exception thereto applies."); *see also McLaren,* 32 F.4th at 242 (remanding case to district court to consider jurisdiction issue, including to the extent "fact gathering may be needed to determine if each element of the local controversy exception is met.").

Appellants, relying upon *Durnell v. Foti,* attempt to argue that certain district courts in the Third Circuit have "expanded" on the burden of the party seeking remand such that "factual disputes must be resolved against remand" and, therefore, the District Court should have sided with Appellants on the substantial basis issue. *Durnell,* 2019 WL 4573247, at *3 (E.D. Pa. Sept. 20, 2019). Brief at 29-30. But this is an inaccurate reading of *Durnell,* and is not the law in this Circuit. Appellants' citation to *Durnell* is merely to a parenthetical quote of an Eighth Circuit decision at

the end of a string cite, included only to emphasize that plaintiffs bear a burden to prove the applicability of a CAFA exception, which Appellees do not dispute. *Durnell*, 2019 WL 4573247, at *3. *Durnell* itself simply faulted plaintiffs for providing *no evidence* to support a finding that two-thirds of the proposed class members would be citizens of the state to which remand is requested as required by CAFA. This clearly ran afoul of the Third Circuit's requirement that a party seeking to invoke a CAFA exception demonstrate its applicability "by a preponderance of the evidence." *Vodenichar*, 733 F.3d at 503. By contrast, the District Court here, following the guidance and standards set out by this Circuit, appropriately weighed the evidence and found that Appellees met their burden to prove by a preponderance of the evidence that the local controversy exception to CAFA applied.[17]

      3.    <u>The District Court properly weighed R&M's conduct against its co-defendants' conduct.</u>

Appellants mistakenly argue that the District Court did not properly compare each Defendant's alleged conduct when it determined that R&M's conduct formed a significant basis for the claims asserted. Brief at 21. This Court requires a

---

[17] The other case cited by Appellants to argue district courts have resolved factual disputes against remand, *Kelly v. Verizon Pa., LLC*, 2019 WL 558100, at *8 (E.D. Pa. Feb. 12, 2019), directly contradicts their position. In *Kelly*, after a "lengthy period of jurisdictional discovery," the district court conducted a "careful review" and determined that the evidence did not support a finding by a preponderance that the local controversy exception applied. *Id*. at 8–11 (analyzing the record). In other words, the *Kelly* court followed Third Circuit precedent and made its findings based on the evidence before it.

"substantive analysis"[18] comparing the local defendant's conduct to that of all defendants. *Kaufman*, 561 F.3d at 156.  The District Court did just that, analyzing the Administrative Order to determine that DEP views R&M as "operationally or corporately responsible" for the Leak "and not some nominal party." JA12 (quoting *Kaufman*, 561 F.3d at 156).

The Administrative Order established for the District Court the significance of R&M's alleged conduct compared to the other Defendants. This is more than adequate to justify the District Court's determination that R&M's conduct formed a significant basis for Appellees' claims. *Kaufman*, 561 F.3d at 156, 157 (noting "if the local defendant's alleged conduct is a significant part of the alleged conduct of all the Defendants, then the significant basis provision is satisfied," that the word

---

[18] This Court has suggested that the following factors are helpful in assessing the "significant basis" prong:

> 1) the relative importance of each of the claims to the action; 2) the nature of the claims and issues raised against the local defendant; 3) the nature of the claims and issues raised against all the Defendants; 4) the number of claims that rely on the local defendant's alleged conduct; 5) the number of claims asserted; 6) the identity of the Defendants; 7) whether the Defendants are related; 8) the number of members of the putative classes asserting claims that rely on the local defendant's alleged conduct; and 9) the approximate number of members in the putative classes.

*Kaufman*, 561 F.3d at 156 n. 13. However, this analysis may include "any or all of these factors." *Id.* The task required of the district court is not to apply any one factor but instead to "provide a reasoned analysis that focuses on the conduct of the Defendants—local and non-local—as alleged in the complaint." *Id.*

"significant" is defined as "important, notable," and that "[t]he local defendant's alleged conduct must be an *important* ground for the asserted claims in view of the alleged conduct of all the Defendants"); *Walsh*, 894 F.3d at 592 ("the local controversy exception does not require that the local defendant's conduct be *the most* significant conduct or that it predominates over claims against other defendants.")

Appellants also raise the specter of "group pleading," which they argue "render[s] the comparative analysis impossible" because "R&M is one of Energy Transfer's 347 subsidiaries, which operate for different purposes in different segments of the industry[.]" Brief at 24–25. Of course, this ignores that out of those 347 subsidiaries, R&M and SPLP are the only two companies that DEP chose to name in the Administrative Order, and none of the other Energy Transfer entities that are not named in the Administrative Order are named in the Complaint.

At bottom, the heart of Appellants' objection to remand is not with the *standard* applied by the District Court, but with the District Court's *findings* based on the record. Such findings, however, are entitled to deference and should only be reversed in the face of clear error. *See Stewart v. Entergy Corp.*, 35 F.4th 930, 932 (5th Cir. 2022); *Mondragon*, 736 F.3d at 886; *Coffey*, 581 F.3d at 1246. The District Court's decision to credit the administrative record over Appellants' self-serving and untested declaration was not clearly erroneous. Because the record supports the District Court's conclusion that Appellants proved the applicability of the local

controversy exception by a preponderance of the evidence, the Court should affirm.[19]

### 4.    DEP's subsequent follow-up letter does not affect remand.

Finally, Appellants contend that DEP's follow-up letter addressed to Appellants, dated July 14, 2025 (a month after remand), confirms that the District Court's factual finding regarding the import of the Administrative Order "was erroneous." Brief at 33 (citing Mot. to Supp., Ex. 1). This is wrong for at least three reasons.

*First*, the July 14 Letter does not say what Appellants suggest it says. The plain purpose of the letter is to *add* a responsible party—ETLP—which was "not one of the named entities" in the Administrative Order but which DEP subsequently learned was the "ultimate parent corporation" for SPLP. Mot. to Supp., Ex. 1. The July 14 Letter does not limit DEP's view of the responsible parties to only SPLP and ETLP; it merely states that, *to date*, DEP "has looked to SPLP, and its ultimate parent corporation Energy Transfer LP, to perform the response, investigation, and remediation necessary to address the contamination resulting from the release from SPLP's pipeline." *Id.* (emphasis added). Indeed, while DEP has yet to require an individual "response" from R&M, it also explained that it "retains the right to

---

[19] It is inconsequential that PHSMA did not also name R&M in any administrative orders, as Appellants note. Brief at 27. At most, this is merely a fact that the District Court weighed and rejected—a determination subject to clear error review.

enforce its Order" against R&M. Nothing in the July 14 Letter contradicts any of the observations the District Court made about the Administrative Order. DEP did not retract the Order's binding effect on R&M (in fact, it did the opposite), further confirming that R&M forms a "significant basis" for Appellees' claims.

*Second*, Appellants' reliance on the July 14 Letter betrays what its appeal is all about: an invitation for this Court to engage in factual findings about the Administrative Order. With respect to the July 14 Letter, Appellants invite the Court to find facts that have not even been considered in the first instance by the District Court. *Sewak v. INS,* 900 F.2d 667, 673 (3d Cir. 1990) (appellate courts "do not take testimony, hear evidence or determine disputed facts").

*Third*, and finally, the July 14 Letter postdates the Complaint, the motion to remand, and the remand order. The local controversy exception's applicability is determined based on facts as they exist at the time the lower court considers remand. *Kaufman*, 561 F.3d at 152–53. It would engender procedural chaos to permit parties to undo remand based on *disputed* facts that arise after a lower court has already granted remand months previously.

## <u>CONCLUSION</u>

The Court should dismiss this appeal for lack of jurisdiction and deny Appellants' petition to appeal filed in Case No. 25-8027. Alternatively, if the Court reaches the merits, the Court should affirm remand of this environmental tort action to Pennsylvania state court.

Dated: November 19, 2025                    Respectfully submitted,

 */s/ Shanon J. Carson*
Shanon J. Carson
Y. Michael Twersky
Joseph E. Samuel, Jr.
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-4656
scarson@bergermontague.com
mitwersky@bergermontague.com
jsamuel@bergermontague.com

Jordan C. Hughes
**BERGER MONTAGUE PC**
1229 Tyler Street NE, Site 205
Minneapolis, MN 55413
Telephone: (763) 340-0285
jhughes@bergermontague.com

*Counsel for Appellees-Plaintiffs*

## <u>COMBINED CERTIFICATES OF COMPLIANCE</u>

I hereby certify as follows:

1.      Pursuant to this Court's Local Appellate Rules 28.3(d) and 46.1(e), as the signatory of the foregoing Document, I am admitted and a member in good standing at the Bar of this Court.

2.      This Document complies with the requirements of Federal Rule of Appellate Procedure 32(a)(7)(B) because, excluding the parts of the document exempted by Rule 32(f), it contains fewer than 13,000 words (specifically, it contains 12,997 words), as counted using the word-count function on the Microsoft Word software.

3.      This Document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word with 14-point Times New Roman font.

4.      The text of the electronic Document is identical to the text in any paper copies.

5.      A virus detection program has been run on the file, and no virus was detected. The virus detection program used is Microsoft Defender Antivirus.

Dated: November 19, 2025                     */s/ Shanon J. Carson*
                                             Shanon J. Carson

## <u>CERTIFICATE OF SERVICE</u>

I, Shanon J. Carson, Counsel for Appellees, certify that, on November 19, 2025, I electronically filed the foregoing Brief of the Appellees to this Court with the Clerk of the Court for the United States Court of Appeals for the Third Circuit via this Court's CM/ECF system.

I further certify that the foregoing Document was served electronically upon each of the following registered users by filing it via the Court's CM/ECF system:

Diana Amaral Silva
Robert D. Fox
Laura Hughes McNally
Cassidy Duckett Britt
Drew Cleary Jordan
Duke K. McCall III
Bryan M. Killian

*Counsel for Sunoco Pipeline L.P., Energy Transfer LP, and Energy Transfer (R&M) LLC*

Dated: November 19, 2025                 */s/ Shanon J. Carson*
                                          Shanon J. Carson